Good morning, Your Honors. Good morning. May it please the Court, Elizabeth Beasley on behalf of Appellant M.I.S.C. Berhad. Fundamentally, Your Honors, the District Court error is made clear in one sentence in the underlying order. And I will read that sentence for the Court. And there are two errors which are made clear by this sentence. The documents equatorial. I'm sorry. Thank you. On the District Court order, page 7, which begins with the paragraph additionally, the second to the last sentence, beginning with the documents. The documents equatorial had generally support a reasonable belief of at least the potential likelihood that M.I.S.C. was liable to equatorial. The standard here, the standard in the Central District, the standard in the Ninth Circuit, the standard set forth by the Supplemental Admiralty Rules requires more. It requires more than a wing and a prayer. It requires the plaintiff to state with particularity on verified pleading, all facts. Not all facts through rose-colored glasses. Not all facts that benefit the plaintiff. But all facts that support the claim. We must remember that this is an extreme remedy. The extreme remedy here is the attachment of a $70 million valued very large crude carrier, which was fully laden and moored in the Port of Long Beach. That extreme remedy on an ex parte basis requires a complete and full disclosure of pertinent facts. The only value to the judicial officer, in this case the district court judge, reviewing that pleading, is the veracity of the allegations set forth in the verified complaint. Rule B and Rule 2A of the Supplemental Admiralty Rules compel the plaintiff to disclose those facts. Can you point to this sentence? What's wrong with it? The potential likelihood. I focus on the words with a reasonable belief of at least the potential likelihood. That is a notice pleading standard. That is a Rule 8 standard, Your Honor. Here we have a Rule E2A and a Rule B standard. The Federal Rules of Civil Procedure in the Supplemental Rules require, specially require, verified pleadings and verified facts to state all facts. Let's take your point that the pleading wasn't pled with the specificity required. Let's assume that for the sake of discussion. What we're talking about now is not whether the pleading was adequate but whether they acted in bad faith. That's correct. And I think the court can conclude that if it was incumbent upon the plaintiff to disclose pertinent facts, then the court can conclude that it cherry-picked, that it filtered facts, that it did not disclose pertinent facts. I mean, I can see a difference between inadequate pleading and bad faith. Can you? Yes, I can. But I can also see the difference in connecting the dots. And if you do not disclose pertinent facts, I think it is logical to conclude that you specifically chose not to. Why don't you tell us what evidence of bad faith is there? I guess what I'm asking. Oh, sure. And tick them off. Yes. Yes. Thank you, Your Honor. The complaint alleged a breach of contract. And it attached terms and conditions and contended that MISC and Equatorial were parties to that contract. At the time that the plaintiff filed the verified pleading, it had possession of three operative contracts. Those contracts were not attached to the complaint. And those contracts, MISC, was not a party to those contracts. What you're saying is they attached to the complaint something purporting to be a contract with your client that wasn't a contract with your client. That's correct. Okay. And this Court found that to be true in the earlier proceeding. Now we're talking bad faith. What else do you got? So it also then attached several documents, bunker delivery receipts, tax invoices and the like, which was a amount of evidence, none of which it bound MISC. And Judge Kaczynski, in the earlier opinion, found it did not bind MISC. It found, Judge Kaczynski specifically made clear that it takes two parties to contract like it takes two to tango. And he having reviewed, and that is a quote out of his opinion. No doubt. Having reviewed all of the documents, he concluded on an objectively reasonable basis, which is the standard, Your Honor, for determining whether a party has acted in bad faith. It is not objectively reasonable to conclude that you had a, that MISC had a contract with Equatorial. And what I think is particularly noteworthy on bad faith is this, this party, this plaintiff denied it knew that M.A. Link was involved. It denied it knew it had a contract with M.A. Link. It stood before this Court and this Court and this Court and denied that it was even aware of M.A. Link until our E4F hearing. Yet, on inquiry, we reviewed the declaration of the parties, and we unearthed the facts transmission when the, when, when Mal received those contracts and made them admit that, indeed, they had possession of the operative contracts, and their contracts between, between Equatorial and M.A. Link, and did not disclose that to the Court. And, indeed, stood before this Court and said that we were not aware that M.A. Link was involved in this case until the E4F hearing. They did not disclose that they had met with M.A. Link before they filed a verified complaint. They did not disclose that M.A. Link had paid them $2 million on that contract. And they never explained to this Court or the Court below how it sought to impose standard terms and conditions in a contract on M.I.S.C., to which M.I.S.C. was not a party. They shaded the facts. They filtered the facts. And you cannot allow, on an ex parte procedure, a party to omit material facts and do so hoping, in this case, that the other side would post security. That's their motivation. You want motivation? That's their motivation. They hoped we would post security and ensure their debt, even because they knew we had a $70 million tanker which was under contract and had significant obligations. They knew it would put my client in a commercial bind. And that is the exact reason that this Court needs to make clear that the standard going forward in this circuit is that you need to have a judge or a judge to make a clear claim so that judicial officer can evaluate that complaint and decide whether an attachment should issue. Do you want to reserve some time? Yes. Three minutes, please. We've got about two and change. Two and change. Okay. Thank you. Good morning. Good morning. May it please the Court. I'm a lawyer. I'm a lawyer from the law firm Esquire, Sanders & Dempsey. We're the attorneys for Equatorial Marine Fuel Management Services, PTE, LTD. This appeal is about a claim for wrongful attachment of a vessel. It's not about a Rule B attachment. It's not about what happened in the previous appeal. It's the statutes – the regulation. We're old school. And what the court has to say that it can't do. We need time to do it. Counsel, did your client ever present to the Court a contract signed by the shipping company and your client? There isn't any. The answer is there doesn't exist. It doesn't exist because the way the bunker trade is mapped, if we were to, if Anbras didn't it's done between brokers with a broker in the middle. So oftentimes the contract is implied by the actions of the party. Counsel, I read your dialogue with Judge Kaczynski where you were claiming all of these practices in the bunker trade, but they kind of all add up to bunk. Well, I don't know if they add up to bunk or not, Your Honor. I think there's an actual practice that we put the custom of the trade – it's actually in the record. And it shows the actual practices here. Here what we have before the court, though, is an undisputed fact that the burden of proof is on MISC to prove the attaching party, Equatorial, acted in bad faith with malice or gross negligence. That's the standard. What's the standard of review for that? The standard of review. That is the standard of review. So the standard of review from our perspective is clear error, right? It's clear error, yes, Your Honor. Judge Fairbank, after reviewing the record, found MISC did not carry that burden and found that Equatorial had a plausible basis for filing the complaint and seeking the attachment. Well, what was that basis since you have the bad faith listed? I'll go into that, Your Honor, right now. Okay, right now. The district court found in part that all the pre-attachment documents showed MISC as the buyer, Equatorial as the seller, including the supply contracts that MISC is now relying upon. MISC coordinated all of the bunker deliveries with Equatorial in Singapore. No mal any place in sight. Counsel, did you have in your possession the contract between the shipper, the shipping company, and the Asian company? And NAL, Your Honor? Yes. No. What we received in... Are you stating to this court that you did not have those in your possession? There's no contract that Equatorial ever entered into with NAL. Well, that may be so, but NAL did enter into a contract with the shipping company. They entered into a contract with the shipping company, Your Honor. And you had that in your possession? What we had in our possession from November, from mid-November of 2008, after these proceedings started for the collection, we had the supply documents that I just referred to, the sales agreements for the months of September, October, and some of August, that set the price between MISC and NAL. But we never saw those, Your Honor, at the operative times of dealing with the matter. What do you consider to be the operative times? The operative times were up until the time that the vessel was attached. We never saw the contract, Your Honor, between NAL and MISC until December 15th, motion to vacate. On November 18th, wasn't there an e-mail to Mrs. whom? Mrs. June? Mrs. June. Mrs. June indicating that MIS had to deal with NAL and that NAL would be paying for the contract. No. What there was, Your Honor, was there was a meeting. There was a meeting on the 7th of November between Mrs. Chung as the managing director of Equatorial and Joe Khalid. That was December? December 7th. I'm asking you about the communication on November 18th. Well, I'm getting to that, Your Honor. With Joseph Khalid on November 7th, Mr. Khalid at that time told Mrs. Chung that he represents MISC. Not that he was the principal, but that he represents MISC. And in turn, Mr. Khalid asked Mrs. Chung to prepare on behalf of Equatorial a payment schedule. This is on December 7th? This is on December 7th. When are you going to get around to November 18th? When MISC failed to make that first payment, Mrs. Chung immediately started contacting MISC and said, you haven't made the payment. Let me ask the question again. What happened on November 18th? Was there an email to Mrs. Chung putting her on notice that the contractor here was NAL and not MISC? I don't believe so, Your Honor. I mean, there's an email, but there's a whole history to that email. And if I could go through it. Well, the history is your subsequent stuff. I'm asking you what happened on November 18th, and for some reason you don't care to address it. Well, it's the prior stuff that leads up to the 18th, because it's all about reasonableness. One of their arguments is that on November 18th, your client was put on notice that they have the wrong people. Now, did that happen or did it not happen? It did not happen in Mrs. Chung's commission. There was no email to her on November 18th. Because there's a lot of emails flying back and forth. Yeah, there may have been, but I'm asking you about one. And apparently you're not familiar with it or don't care to address it. Well, I have one question, too, I want to ask about. What the district court judge found was that you could reasonably have, your client could have reasonably relied on this theory that NAL was the broker or the agent for MISE. But your verified complaint doesn't allege anything about NAL being the agent. So how could that be the basis for her subsequent ruling? At the time that the complaint was drafted, we did not have any indication, Your Honor, that there was a contract between NAL and MISE. So the supply contracts that the MISE is relying upon, those supply contracts list the buyer as MISE, the seller as equatorial, and they incorporate terms and conditions where title never passes, where title never passes from equatorial until it goes over the rail of the ship. And once it's over the rail, it's got to be paid for. Title never was in the hands. Who was supposed to pay for it? Under the supply contracts they're relying upon. Who were you expecting to pay for it? I mean, NAL, right? NAL. But the title was never in NAL's hands at any point under the terms and conditions of the contracts they're relying upon, the supply contracts. So it incorporates BIMCO terms, and BIMCO terms are very clear in the maritime industry of when title passes. So the two individual companies in the middle, Compass and MAL, are co-brokers. That's the understanding, the good faith understanding, that Equatorial and Mrs. Chung have through this entire operation, because Compass, who she deals with on a regular basis, she asked him on November 6th, Who is MAL? She does this just before she meets with Mr. Khalid. Compass says they're co-brokers. So Compass and MAL are co-brokers. She has that good faith belief that that's going on. She would never, and Equatorial would never, extend $22 million worth of credit to some company that was in the spare parts business. Thank you very much, Mr. Sterling. Ms. Beasley, back to you. You have a little over two minutes left. I only have three points. To answer your question, Judge Wardlaw, we would submit that it's de novo review as to whether the district court applied the correct pleading standard and whether the district court applied the correct standard for gross negligence. We submit to this court that the court conflated Rule 8 and Rule 2A, and I focus on the potential likelihood language there, and that it is more than a notice pleading standard, and that had it been incumbent upon the plaintiff to plead with the requisite particularity, the plaintiff would have pled the very facts that Judge Fletcher has in her mind at the moment. And had those facts been pled, it is likely that the attachment would not have issued. We also say on de novo review that it is an objectively reasonable standard by which they are judged. They are judged by to determine whether on an objective basis looking at all the facts, the conflicting facts, the facts which are adverse, and it is on that basis they are judged as to whether they are grossly negligent. We heard quite a bit today about the subjective facts, the subjective facts about what they hoped Compass was, who they hoped the agent was, how they hoped this deal had gone together. Again, that's a wing and a prayer, and that is not the standard here. We also heard about an implied contract, that these types of bunker deals are done all the time. If these types of bunker deals are done all the time, this bunker deal with Mal, these three contracts which this court found, which the district court found on page 5, beginning with the paragraph prior to filing, the district court found on November the 14th that Equatorial had in its possession those three contracts with Mal. Now, Equatorial cannot have had more, could not have had other contracts. It had all of the operative contracts in its possession on November 14th, and none of those contracts were in the complaint. As it applies to this court's comment on the November 18th email, that is indeed, that is indeed when Equatorial was advised that M.A. Link was paper trading, that they were traitors. That is correct, Your Honor. And finally, the record at page 236 and 423 to 427 confirms, that's the Ms. Hoon declaration, it confirms that she had all of the contracts in her possession before the verified complaint was filed. They knew who M.A. Link was. Thank you, Ms. Beasley. You are welcome.  Thank you. Thank you, Your Honor. Appreciate it. Good morning. 10-55696 Salmano, I'm sorry if I'm butchering that name, versus Kaiser Foundation.
judges: Fletcher, Silverman, Wardlaw